UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| RICHARD HENDERSON, | § § § § | |
| *Plaintiff,* | § § | Civil Action No. |
| v. | § § | 3:21-cv-255 |
| NESMETAJU, LLC and MARKETING LABS, LLC, d/b/a BRIGHTENLOANS.COM, THELENDSOURCE.COM and RUSHINLOANS.COM | § § § § § § § § | **Jury Trial Demanded** |
| *Defendants.* | § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**RICHARD HENDERSON** ("Plaintiff"), by and through his attorneys, **Kimmel & Silverman, P.C.**, responds to the motion to dismiss amended complaint filed by **NESMETAJU, LLC and MARKETING LABS, LLC**

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

Nesmetaju, LLC is a St. Kitts and Nevis based company that owns and operates various websites purporting to offer loans to US-based consumers through various websites that are nearly identical to one another. *See* Sec. Am Compl. Exhibits B.  Marketinglabs is a subsidiary of Nesmetaju headquartered in Sheridan, Wyoming.  *See* Ex. A, 7.1 Disclosure from case *Smith v. Marketinglabs, LLC*, 2:20-cv-11796 (CACD 2020).   Nesmetaju is incorporated in St. Kits and Nevis, a country with a population of 60,000 that requires little corporate transparency.

1

Marketinglabs incorporated in Wyoming, a US state with among the least required corporate transparency. *See* Ex. A. Here, the Defendants seek to capitalize off their relative anonymity and continue their secretive financial endeavors while avoiding recourse for their violations of US privacy laws by virtue of their opaque and elusive nature.

In short, Defendants' motion to dismiss seeks to penalize Plaintiff for not knowing the unknowable before the fact-finding process. Nesmetaju and MarketingLabs seek to avoid any consequences for their violations of the TCPA in furtherance of their efforts to lure US-based consumers into dubious "loan" offers made through text messages sent without express written consent.

However, before Plaintiff retained counsel, he was savvy and wise enough to capture images from the subject websites when Nesmetaju still identified itself in the privacy policies of "Rushin Loans" and "Brighten Loans" websites. Exhibits B and C, 2020 privacy policies for Rushin Loans and Brighten Loans. Furthermore, Plaintiff's counsel recently litigated a case *Smith v Marketinglabs* in California involving text messages from nearly identical websites operated by Marketinglabs, where Marketinglabs disclosed (as required under FRCP 7.1) that it was owned by Nesmetaju. Ex. A. The text messages at issue were sent by Nesmetaju and its US-based subsidiary Marketing labs without consent and even after Plaintiff repeatedly told the companies to "stop." Sec. Am. Compl., ¶ 27; Sec. Am. Compl.'s Ex. A.

Fearing scrutiny as to their "lending" operations and their disregard of United States consumer privacy laws, Defendants seek to kill this case before the fact-finding process because there are still some gaps of information that require discovery. However, contrary to the apparent belief of many in the consumer-defense bar, a plaintiff is not required to prove each and every component of his case at the pleading stage. A complaint is not obligated to contain proof beyond

a reasonable doubt, or even evidence that is persuasive by a preponderance of the evidence. Rather a plaintiff is required to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). A defendant on notice as to the basis of the claims and be *plausible*.

Fortunately (as set forth below), courts have routinely rejected the take Rule 8 to absurd levels and understood certain things cannot be known before discovery. Here, Plaintiff and his counsel exercised their due diligence, conducted substantial research and have connected the dots to link the unlawful texts to the unscrupulous "lenders" who are the Defendants. It is clear Marketinglabs and Nesmetaju work in concert and has been acknowledged by Marketinglabs on the public docket that Marketinglabs is a subsidiary of Nesmetaju. Ex. A. Plaintiff has identified the date and time of the violative text messages, articulated that Defendants are soliciting purported "loans" to Mr. Henderson and that he did not consent to those texts and even told Defendants repeatedly to "stop." *See* Sec. Am Compl. Generally. Plaintiff has gone above and beyond what Rule 8 requires and Defendants' efforts to avoid the fact-finding process should be rejected by the Court.

## II. STATEMENT OF RELEVANT FACTS

II. Statement of Relevant Facts

Plaintiff is a natural person residing in League City, Texas 77573. Sec. Am Compl. ¶ 7. Defendant Marketing Labs is a limited liability company which maintains an office in Sheridan, Wyoming. Sec. Am Compl. ¶ 9. Defendant Nesmetaju is a foreign company domesticated in St. Kitts and Nevis owned by Anton Ignatenko. Sec. Am Compl. ¶ 11; *See* Ex. A, 7.1 Disclosure of

Marketing Labs identifying it is a subsidiary of Nesmetaju. Nesmetaju is a parent-company of Marketing Labs. Sec. Am Compl. ¶ 12; *See* Ex. A.

At all times relevant hereto, Plaintiff, Richard Henderson, maintained a cell phone, the number for which was (281) XXX-2765. Sec. Am. Compl., ¶ 16. At all times relevant hereto, Plaintiff used that cell phone for residential purposes. Sec. Am. Compl., ¶ 17. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on or around May 13, 2010. Sec. Am. Compl., ¶ 18. Mr. Henderson registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing solicitation. Sec. Am. Compl., ¶ 19. At all times relevant hereto, Defendants worked together in concert. Sec. Am. Compl., ¶ 20.

Defendants own and operate various companies that purport to offer personal loans to US-based consumers. Sec. Am. Compl., ¶ 21. Defendants engage in telemarketing in order to solicit the interest for such loans. Sec. Am. Compl., ¶ 22. Between November 2020 through at least December of 2020, Defendant sent a series of solicitation text messages to Plaintiff in order to direct Plaintiff to apply for loans operated by Defendant. *See* Sec. Am. Compl.'s Exhibit "A."

Defendants operate through several alter egos or subsidiaries that hold themselves out, inter alia "BrightenLoans.com", "TheLendSource.com", and "RushInLoans.com." Sec. Am. Compl., ¶ 24. Henderson did not express interest in personal loans from any such entities, and did not consent to these messages from Defendants. Sec. Am. Compl., ¶ 25. For instance, following the receipt of the harassing messages, Plaintiff replied "Stop" and received a message which indicated he was taken off of their internal contact list. However, despite these assurances, Defendants continued to contact Plaintiff. Sec. Am. Compl., ¶ 27. In total, Defendants[1] placed at least 20

---

[1] In paragraph 28 of the Second Amended Complaint, Plaintiff inadvertently wrote "Defendant" rather than the plural "Defendants". That was a typographical error.

text messages to Plaintiff, at dates/times reflecting in the screenshots attached as Exhibit A to the Second Amended Complaint.

All of the messages sent by Defendants to Henderson contained messages with a link to a website to sign up to qualify for a loan. Sec. Am. Compl., ¶ 30.  As a result of the persistence of the unwanted messages, Mr. Henderson tried to ascertain who was responsible for sending these unsolicited messages.  Plaintiff followed the links contained in the text messages. Sec. Am. Compl., ¶ 31.  Plaintiff was directed to three websites for BrightenLoans, TheLendSource and RushInLoans, which all had virtually identical graphics and design and described various loans from the Defendants' affiliate companies.  Sec. Am. Compl., ¶ 32; print outs from the websites BrightenLoans, TheLendSource and RushInLoans are attached as Exhibits "B", "C" and "D" to the Second Amended Complaint.

As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendants. Sec. Am. Compl., ¶ 33.  Furthermore, Defendants failed to register as telephone solicitors with the Texas Secretary of State, despite engaging in telephone solicitation from Texas consumers.  Sec. Am. Compl., ¶ 34. The foregoing acts and omissions were in violation of the TCPA and Texas Business and Commerce Code.  *See* Counts I-III.

### III.   ARGUMENT

#### A. Standard

##### 1. **Standard for 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim for which relief can be granted." When considering

a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff need not "prove its case at the pleading stage," CyWee Grp. Ltd. v. Huawei Device Co., No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 135491, at *14 (E.D. Tex. Aug. 10, 2018).

### 2. Standard for 12(b)(1)

When faced with a motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the basis of lack of Article III standing, a "plaintiff must demonstrate their constitutional standing by showing: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 272 (3d Cir. 2016). To establish an injury-in-fact, Plaintiff must show that he has suffered "an invasion of a legally protected interest" that is both "actual or imminent, not conjectural or hypothetical" and "concrete and particularized." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citation omitted).

### B. The FCC Has Ruled that Sellers Cannot Evade Liability By Outsourcing Telemarketing to Anonymous or Unidentifiable Parties

6

The FCC however has clearly foreclosed that gap through a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing.

> Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, **unidentifiable, or located outside of the United States**, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because sellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted)(emphasis added).

Here, Defendants attempt to do exactly what the FCC warned against. Marketinglabs and Nesmetaju seek to capitalize off the fact Plaintiff cannot know exactly which party within their conglomerate sent the texts at issue. That does not preclude liability (let alone warrant dismissal at the pleading stage) because sellers are liable for the acts and omissions of otherwise unknown telemarketers.

### C. The Second Amended Complaint Pleads Sufficient Facts as to the Relationship Between the Defendants and the Identity of Which Party Directly Sent the Offending Text Messages.

In their Motion to Dismiss, Defendants argue the Second Amended Complaint contains insufficient detail as to the relationship between the Parties and which party directly sent the offending texts. Defendant's Motion, pp. 11-18. As set forth below, that argument is misguided.

In order to sufficiently allege an agency relationship in which vicarious liability can be found, Plaintiff must do more than allege mere conclusory allegations. Plaintiff's allegations must

"allege a factual predicate 'that gives rise to an inference of an agency relationship'". *Cunningham v. Lifestyles Dev., LLC*, 2019 U.S. Dist. LEXIS 154112, *10-11, 2019 WL 4282039 *quoting Mauer v. Am. Intercontinental Univ., Inc.,* No. 16-cv-1473, 2016 U.S Dist. LEXIS 120451, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016); *See Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) (finding Plaintiff sufficiently alleged vicarious liability by alleging "an unlawful telemarketing scheme the end result of which was the generation of business for [defendant]...[and] [defendant] was an active participant in that scheme"); *Cunningham v. Rapid Capital Funding, LLC/RCF*, No. 3:16-cv-02629, 2017 U.S. Dist. LEXIS 136951, 2017 WL 3574451, at *5 (M.D. Tenn. July 27, 2017) (relying on *Rapid Response Monitoring Servs., Inc.* in concluding that Plaintiff had sufficiently alleged vicarious liability); *Cunningham v. Foresters Financial Servs., Inc.*, 300 F. Supp. 3d 1004, 1015 (N.D. Ind. 2018) (holding Plaintiff sufficiently put "Defendants on notice of his TCPA claims" in alleging that "Foresters Defendants directed the quality, timing, geographic location and volume of co-defendants' applicants").

Plaintiff alleges that the Defendants "worked together in concert." (Am. Compl. ¶ 19). Marketinglabs is a subsidiary of St. Kits-based Nesmataju and the two worked in concert. Defendants' business model is designed to be as opaque and elusive as possible causing victims of their consumer-privacy violations to have no options as the identities of the TCPA offenders is shielded through spoofed numbers, various names, and telephone scripts designed to offer very little by way of identification. Defendants' motion seeks to have the court believe that Plaintiff received calls from a telephone number attempting to sell a product, and Plaintiff sued the first company it could find that sells similar products. Plaintiff visited the websites provided in the text messages and discovered virtually identical graphics and design which described various

8

loans from Defendants' affiliate companies. (Am. Compl. , ¶ 30-31).  Further, Plaintiff alleges that "Defendants operate through several alter egos or subsidiaries" and even mentions them by their specific names. (Am. Compl., ¶ 23).

Fortunately, courts have caught on to the self-perpetuating gamesmanship of the telemarketing industry, where the telemarketers refuse to make information known to the parties they call, then seek dismissal based on a lack of minutiae in the complaint.  In the recent case *Bower v. Nat'l Admin. Serv. Co., LLC*, No. 4:21-CV-00998, 2022 U.S. Dist. LEXIS 48027 (M.D. Pa. Mar. 17, 2022) a car-warranty conglomerate moved to dismiss a TCPA plaintiff's complaint using a strikingly similar argument to that advanced by the Defendants here.  Even though the plaintiff could not identify the precise role of each related company, Judge Brann refused to allow the companies to hide behind the secrecy of their corporate structures and rejected the notion that the complaint was "threadbare" and found the affiliated companies were perfectly able to answer the complaint (through their jointly retained counsel):

> as I see it, the Companies' arguments do little more than mark squares on the hyperbole bingo card. To start, the logical conclusion at this pleading stage *is* that these identical pre-recorded messages came from the same source, especially absent any argument that this pre-recorded message is used industry wide. That Mr. Bower acknowledged he could not identify the caller until he bought a policy after the seventh call is neither a fatal flaw, nor does it render his pleadings wildly speculative.
>
> **The Companies' attempt to hide behind its corporate structure are similarly unavailing. Far from a threadbare recital of the elements of the cause of action, Mr. Bower's complaint details when he joined the state and federal do-not-call lists. It lists the numbers that he got calls from, the dates he received those calls, and describes the calls' contents.** And finally, it identifies Pelican Holdings Group as the seller of the policy, National Administrative Service as the administrator, and further alleges, given their business arrangement, that they should be held jointly and severally liable for violations. **A jointly represented duo should have no difficulty intelligently answering this complaint.**

9

Bower v. Nat'l Admin. Serv. Co., LLC, No. 4:21-CV-00998, 2022 U.S. Dist. LEXIS 48027, at *6-7 (M.D. Pa. Mar. 17, 2022)(emphasis added).

Here, like in *Bower*, Henderson's Second Amended Complaint identifies when Plaintiff received the text messages, what was being solicited and which companies were behind the messages. Nesmetaju and Marketinglab's efforts to hide behind their corporate structure is just as unavailing as the warranty company defendants in *Bower*.

Similarly, in *Klassen v. Protect My Car Admin Servs.*, No. 8:21-cv-761-MSS-TGW, 2021 U.S. Dist. LEXIS 160058M.D. Fla. Aug. 23, 2021), a TCPA defendant argued the complaint contained insufficient detail about the agency relationship between the defendant and the purportedly calling party. Judge Scriven of the Middle District of Florida soundly rejected the defendant's argument as disingenuous:

> The Defendant argues that Plaintiff cannot state a TCPA claim because she fails to identify 'who called her [ ] in violation of the TCPA.' This argument lacks merit. Klassen alleges that 'Defendant repeatedly called [her] on her cellular telephone number on a repetitive and continuous basis for solicitation purposes.' Protect My Car is the Defendant. Nothing more is required to plausibly allege that Protect My Car made the offending calls. Protect My Car responds that Klassen creates "confusion" by making the boilerplate allegation that Protect My Car "acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers when placing calls to [Klassen]." But Protect My Car cites no authority suggesting that this allegation requires dismissal of the TCPA claim.

*Klassen*, 2021 U.S. Dist. LEXIS 160058, at *5-6. In *Klassen*, the plaintiff learned in discovery that the originally-named defendant did not actually place the calls but an affiliated company (headquartered in the same building and owned by the same principals as the originally-named defendant) placed the calls. Klassen, 8:21-cv-00761, Doc. No. 34 (M.D. Fla.) Accordingly, Ms.

10

Klassen amended the complaint to identify the previously unknown calling party. *Klassen,* 8:21-cv-00761, Doc. No. 34 (M.D. Fla.) Protect My Car's efforts at gamesmanship due to its corporate structure was rejected by the court and the plaintiff learned what could not have been known during the fact-finding process after the pleading stage. Nesmetaju and Marketinglab's gamesmanship should be equally futile here as that of Protect My Car.

In *Baldridge v. Sunpath, Ltd.*, 2022 U.S. Dist. LEXIS 38377 (S.D. Tex.), a TCPA defendant unsuccessfully attempted to evade liability on the basis that the complaint did not allege it directly made the calls at issue and the complaint was purportedly "vague, broad, general and non-specific" as to the relationship between SunPath and the still unknown telemarketer that the court could not exercise jurisdiction. 4:21-cv-03629 Doc. No. 8. Judge Hittner of this District soundly rejected that argument finding the basic description of the relationship between SunPath and its various telemarketers was sufficient to defeat a motion to dismiss. *Baldridge v. Sunpath, Ltd.*, Civil Action No. H-21-3629, 2022 U.S. Dist. LEXIS 38377 (S.D. Tex. Mar. 4, 2022)

In *Bilek v. Fed. Ins. Co.,* No. 20-2504, 2021 U.S. App. LEXIS 23655 (7th Cir. Aug. 10, 2021), the Seventh Circuit laid waste to the notion that Rule 8 requires a thorough knowledge of the intricacies of corporate defendants' contractual relationships before having the benefit of discovery in TCPA claims:

> Bilek alleges more than a formulaic recitation of his cause of action, see *W. Bend Mut. Ins. Co.*, 844 F.3d at 675, and he includes specific facts to support his theory of relief, see *McCauley*, 671 F.3d at 616. Nothing more is required to comply with Rule 8(a)(2), nor to meet the plausibility standard articulated by *Twombly* and its progeny.
>
> Federal Insurance Company's contention that Bilek's actual authority allegations fail to meet these pleading standards is unsupported. Federal Insurance Company argues that Bilek failed to state a plausible agency claim to survive a Rule 12(b)(6) dismissal because his complaint lacks allegations that Federal Insurance

> Company controlled the timing, quantity, and geographic location of the lead generators' robocalls. **But allegations of minute details of the parties' business relationship are not required to allege a plausible agency claim.** See generally *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ("A complaint need not allege all, or *any*, of the facts logically entailed by the claim and it certainly need not include evidence.") (quotation omitted)).

*Bilek*, 2021 U.S. App. LEXIS 23655, at 11-12 (emphasis added).

Here, Nesmetaju and Marketinglabs are asking the Court to plead the minute details of a St. Kits' corporation and its Wyoming-based affiliate which they go to extraordinary lengths to keep from the public eye. That is simply not what Rule 8 requires.

### A. If the Court Finds Insufficient Detail as to the Roles of the Parties, Plaintiff is Entitled to Jurisdictional Discovery

If the Court is inclined to accept the premise of Defendants' jurisdictional argument- that Mr. Henderson pleads insufficient details as to the roles of the parties to identify who directly sent the text messages- then the appropriate result would be jurisdictional discovery.

Rules favor broad discovery, jurisdictional discovery should only be denied where it is *impossible* that the discovery "could . . . add[] any significant facts" that might bear on the jurisdictional determination. *Alpine View*, 205 F.3d at 221. Put another way, jurisdictional discovery should typically be granted unless "no amount of information . . . would strengthen" the movant's jurisdictional claims. *Id.* (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)). Since evidence of jurisdictional facts is often largely or wholly in the possession of an adverse party, broad jurisdictional discovery also ensures that jurisdictional disputes will be "fully and fairly" presented and decided. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345 (5th Cir. 1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947)); *accord Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 964-

65 (8th Cir. 2016) ("[Discovery] as to jurisdiction or venue . . . makes good sense given that jurisdiction is (1) important, (2) often fact-intensive, and (3) only required to be alleged plausibly . . . . A court has an independent obligation to ensure that the case is properly before it. Discovery is often necessary because jurisdictional requirements rest on facts that can be disputed . . . ." (quoting *Oppenheimer Fund*, 437 U.S. at 340 n.13)) *Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.,* No. 2:17-CV-00430-JRG, 2019 U.S. Dist. LEXIS 86350, at *13 (E.D. Tex. May 22, 2019)

In *Cano v. Assured Auto Grp., Sunpath, Ltd., No*. 3:20-CV-3501-G, 2021 U.S. Dist. LEXIS 133338, at *24-25 (N.D. Tex. July 19, 2021), where an extended car warranty conglomerate moved to dismiss a TCPA case, Judge Fish of the Northern District of Texas denied the motion on certain grounds with prejudice while denying the motion without prejudice on other grounds finding that the complaint contained insufficient detail about the agency relationship between the parties but that information would be best known to the defendants, warranting 60 days of jurisdictional discovery:

> [personal jurisdiction based on agency is a 'fact intensive question' that requires the Court to determine whether or not an agency relationship existed. When an inquiry is fact intensive, as with personal jurisdiction, jurisdictional discovery may be warranted.

*Cano*, at 25-26.[2]

The operative Complaint alleges sufficient facts to survive the motion to dismiss, going above what Rule 8 requires. Nonetheless, if the Court finds insufficient detail as to the relationship between the parties and as to specifically which party initiated the subject text

---

[2] After jurisdictional discovery in *Cano*, the Plaintiff amended his Complaint to include the information learned and the defendants simply filed answers rather than reinstating their motions to dismiss. 3:20-cv-03501, Doc. Nos 26, 27 and 28.

messages, the only just outcome would be to afford Plaintiff the opportunity to engage in jurisdictional discovery because the Defendants in this case are deliberately opaque and under-the-radar. Allowing the Defendants to evade both full-discovery and jurisdictional discovery due to the dearth of publicly available information about their covert business and telemarketing operations would allow them to be the beneficiaries of their aversion to transparency. To dismiss the case and deny jurisdictional discovery would be manifestly unjust.

### B. The Amended Complaint States a Claim for Which Relief Could be Granted Under 12(b)(6)

#### 1. The Amended Complaint States a Claim under 227(c) for National Do Not Call Registry

The Amended Complaint asserts a claim for Count II under § 227(c) of the TCPA for the violation of the Do Not Call Registry provisions. The Defendants argue the factual allegations in the amended complaint are inadequate as the Plaintiff has failed to plead that he received more than one telephone solicitation call in a 12-month period, as is required for such a claim. (Defendant's Memorandum, p.4.) Defendants' motion regarding Plaintiff having failed to plead that he received more than one telephone solicitation call in a 12-month period by or on behalf of the same entity, simply ignores his allegations. Plaintiff alleges that his telephone numbers were registered on the National Do Not Call registry since May 13, 2010 and November 11, 2010 (Am. Compl. ¶¶ 13,15.) He also alleges that he received more than one call in a 12-month period by Defendants. In fact, he received 18 in total while the subject telephone numbers were on the Do Not Call registry. (Am. Compl. ¶¶ 28, 30.) Plaintiff is a private citizen that has not pled or indicated that he operates a business from the telephone lines at issue, which are used as his residential phone lines.

The FCC noted in 2003 that, "there is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA." *In re Rules & Regs. Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, 14038, ¶35 (July 2003). The FCC "conclude[d] that wireless subscribers may participate in the national do-not-call list." Id. at 14039 ¶36. "[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" Id. See Hirsch v. USHealth Advisors, LLC, 337 F.R.D. 118, 131 (N.D. Tex. 2020) ("Defendants suggest that cell phones, as a matter of law, cannot be 'residential subscribers'… But the Court disagrees with this isolated authority, and instead follows common sense and the greater weight of authorities in making this a fact question for trial")(emphasis added)(internal quotations omitted); Strange v. ABC Co., No. 19-1361, 2021 U.S. Dist. LEXIS 38882, at *10 (W.D. La. Mar. 1, 2021) ("From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones with do-not-call registries are presumed to be residential subscribers")

Because the Amended Complaint adequately alleges that Defendants violated the Do Not Call Registry provisions, Defendants' motion to dismiss Count II of the Amended Complaint must be denied.

### C. The Second Amended Complaint Alleges Texts Were Willful

Defendants claim the Second Amended Complaint lacks sufficient facts to support willful or knowing violation. Defendants' Motion, p. 26. However ,the Second Amended Complaint describes repeated texts after Plaintiff instructed them "stop" and contains images of same. Sec. Am. Compl, ¶ 27. That is exactly what a willful violation is.

D.  **Plaintiff Has Article III Standing**

1.  <u>**The Amended Complaint identifies a concrete injury in fact**</u>

When faced with a motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the basis of lack of Article III standing, a "plaintiff must demonstrate their constitutional standing by showing: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. To have an injury in fact or legally protected interest the U.S. Supreme Court has consistently stressed that a plaintiff must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him. <u>Domain Prot., LLC v. Sea Wasp, LLC,</u> 2020 U.S. Dist. LEXIS 88404.

Courts within the Fifth Circuit have routinely held that a plaintiff alleging he had to endure the nuisance of unwanted calls, faxes or texts "satisfies the injury-in-fact requirement for a TCPA claim." <u>Maydwell v. Ciara Fin. Servs., Inc.,</u> 2019 U.S. Dist. LEXIS 176800 at *2 (N.D. Tex. Oct. 10, 2019). See also <u>Cunningham v. Mark D. Guidubaldi & Assocs., LLC</u>, No. 4:18-CV-00118-ALM-CAN, 2019 WL 1119365, at *3 (E.D. Tex. Jan. 11, 2019) "However small or trifling," Article III is satisfied by allegations of nuisance and invasion of privacy.; <u>Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.</u>, 2018 U.S. Dist. LEXIS 19209, at *13 (E.D. La. Feb. 5, 2018) (annoyance and the occupation of the fax machine were sufficient injury for a TCPA claim to establish Article III standing; <u>Morris v. Unitedhealthcare Ins. Co.</u>, 2016 WL 7115973, at *5-6 (E.D. Tex. Nov. 9, 2016)(same) See <u>Fairway Med. Ctr. LLC v. McGowan Enters., Inc</u>., No. 16-3782, 2017 U.S. Dist. LEXIS 185551, (E.D. La. Jan. 25, 2017) (same). In <u>Thomas v. Life Protect 24/7 Inc</u>., No. 4:20-cv-03612, 2021 U.S. Dist. LEXIS 171881, at *11 (S.D. Tex. Sep. 10, 2021) In <u>Cranor v 5 Star Nutrition,</u> 998 F3d 686 (5th Cir 2021),  On reversal, the Fifth Circuit held "that

a single text message is a nuisance and an invasion of privacy and, thus, can alone establish standing." Id at 689-90, 692-93. Indeed, this type of nuisance is the kind of injury that the TCPA was specifically enacted to curb. Id at 688; see also <u>Gadelhak v ATT Services, Inc,</u> 950 F3d 458, 462 (7th Cir 2020), the Court held "If a single, unwanted text message gives rise to a concrete injury, multiple unwanted phone calls with prerecorded messages surely do as well. In <u>Pepper v Life Protect 24/7,</u> Civil Action No 20-2154, Judge Hoyt had no difficulty determining that the plaintiff there established a concrete injury by pleading that the calls constituted "a nuisance" because they were "bothersome, disruptive, and frustrating." See also <u>Shields v Dick,</u> 2020 U.S. Dist. LEXIS 170189, 2020 WL 5522991, *3-5 (SD Tex) (finding concrete injury from single text message); <u>Throndson v Huntington National Bank</u>, 2020 U.S. Dist. LEXIS 111060, 2020 WL 3448281, *3-7 (SD Ohio) (concrete injury from unspecified number of "prerecorded calls to cell phones").

Because Nesmataju acknowledged it is associated with the messges sent and Marketinglabs works in concert with Nesmetaju, the defendants can be traced to the injury in fact. *See* Ex. A and B and C.

### E. Second Amended Complaint Not a Shotgun Pleading

Defendants' argument Plaintiff filed a "shotgun pleading" is misguided. Fifth Circuit Courts have found plaintiff's to have not engaged in impermissible group pleadings or "shotgun" pleadings where a plaintiff provides a factual basis to link multiple Defendant's conduct together. *See Ellman v. MDOffice LLC*, 2022 U.S. Dist. LEXIS 59435, *9 2022 WL 980640 (Court found Plaintiff's Complaint was not a shotgun pleading where Plaintiffs explained the basis for grouping the Defendants together).

17

"Plaintiffs cannot be expected to know the exact nature of the connections between the Defendants, and they do not need to know it in order to meet the pleading standard. Importantly, the federal pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Id*. at 10. Plaintiff performed independent investigative research to link the Defendants together while trying to ascertain the party placing the violative communications. Plaintiff has sufficiently alleged a factual basis to group the Defendants together.

### F. Plaintiff States a Claim Under § 302.101 of the Texas Business and Commerce Code

Count III of the Second Amended Complaint is for Defendants' telephone solicitations to Texas residents without obtaining a certificate to be a telephone solicitor. Sec. Am. Compl., Count III. In *Pepper v. Life Protect 24/7, Inc*., No. 4:20-CV-02154, 2021 U.S. Dist. LEXIS 565687 (S.D. Tex. Mar. 1, 2021), Judge Hoyt found it sufficient to state a claim where the complaint stated that the defendant was not registered with the Secretary of State at the time the calls were made because allegations in the complaint are accepted as true.

Here, Plaintiff pleads that Defendants solicited purported personal loans without obtaining the proper registration to do so. That is sufficient under Rule 8 and Defendants' argument to the contrary lacks merit.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss amended complaint must be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: March 15, 2022 | */s/ Jacob U. Ginsburg*<br>Jacob U. Ginsburg, Esquire<br>Kimmel & Silverman, P.C.<br>30 East Butler Avenue<br>Ambler, PA 19002<br>Phone: 215-540-8888 ext 104<br>jginsburg@creditlaw.com<br>teamkimmel@creditlaw.com |

## CERTIFICATE OF SERVICE

I, Angela K. Troccoli, Esquire hereby certify that a true and correct copy of the foregoing has been served on all parties of record via ECF.

>  */s/ Angela K. Troccoli*
> Angela K. Troccoli, Esquire

DATED: March 15, 2022